MUEHLHAUSEN *et al.* v. THE ST. LOUIS RAILROAD COM-
PANY, *Appellant.*

1. **Negligence** : STREET CARS : PASSENGER.   Whatever injury boys who jump on street cars might do to the driver in charge of one, when put off, or whatever reason the driver may have had for not putting off the deceased, a boy eight years old, cannot relieve the company from liability for death inflicted by its negligence, while the deceased was on the car by the permission and consent of the person in charge of it, and under circumstances entitling him to the same care which it was the duty of the company to bestow or observe in carrying passengers.

2. **Passenger** : NON-PAYMENT OF FARE : CARE.   Where one, although he has paid no fare, is on a railway car, with the knowledge and permission of the person in charge thereof, he is a passenger, and is entitled to the same care and protection as if he had paid fare.

3. **Instruction** : "REMOTELY" : "PRUDENCE AND CARE."   An instruction approved, as not being more comprehensive than the petition, and against the objection that it used the words, "remotely," and "prudence and care," without explanation of their meaning.

4. ———— : ONE NEED NOT EMBRACE ALL THE ISSUES : TAKEN AS A WHOLE CORRECT.   The failure to embrace all the issues of the cause in one instruction is not error, if they are included in the series of instructions given and the latter, as a whole, are correct, not contradictory, nor calculated to mislead.

5. **Street Railroads in St. Louis** : ACT OF GENERAL ASSEMBLY OF MARCH 3, 1869 : ADJUSTABLE GATE FOR FRONT OF CAR.   The act of the General Assembly of March 3, 1869 (Acts, p. 207, section 9), relating to street railroad companies in the city of St. Louis, which provides that "no passenger shall be permitted to get on or off any car by the front platform, while the car is in motion, and each car shall be furnished with such adjustable gate or guard as shall effectually prevent it," was passed to secure safety to life and limb, and should not be narrowly construed.   In view of this fact, and the further one that children of an age too young to comprehend the danger of getting off the front end of a car, in motion, are liable to become passengers, as well as adults, it was doubtless within the purpose of the act to provide against danger to said former class, by not only requiring the companies to furnish an adjustable

gate for the front end of the car, but such an one as would effectually prevent them from getting off at that end.

6. **Practice**: EVIDENCE. The objection raised that the evidence failed to show the plaintiffs were the parents of the deceased, *held*, without merit. While the record shows that one of the plaintiffs testified that they were the parents of Johnny Muehlhausen (the name of the deceased being Edward), it also shows that the defendant admitted that the child referred to by the witness was the one run over and killed by the car at the time and place mentioned in the petition.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

The court, at plaintiff's request, gave the following instructions:

"1.  The court instructs the jury that if they believe, from the evidence, that, under the instruction defining what makes a person a passenger, the deceased was a passenger on defendant's car, and that the driver of the defendant, while in charge of said car, was guilty of negligence, carelessness, or want of prudence or skill in managing or conducting said car, and thereby the deceased was jolted or thrown from said car, or was thereby without hindrance enabled to attempt to alight from said car from the front platform thereof, and in consequence thereof injured and killed ; and if the jury further find that the deceased was then and there exercising such ordinary care and prudence as a passenger as could reasonably be expected from a child of his age, then the defendant is liable, and the jury will find for the plaintiffs, providing they also find, from the evidence, that the deceased was an unmarried minor at the time of his death, and that the plaintiffs are his parents."

"2.  Although the jury may find that the deceased, Eddy Muehlhausen, had not paid any fare at the time of the injury, yet if the jury further find, from the evidence, that the deceased was on defendant's car with the

knowledge and permission of defendant's employe in charge of said car, then the deceased was a passenger, and entitled to the same care and protection as if he had paid his fare."

"3. The jury are instructed that the care and foresight required of a child is not the same as that which is required of a grown person, and that in the case of a child, it is required to act with the care and prudence which can reasonably be expected of its capacity and age; and when it manifests as much care and prudence as can reasonably be expected from it, the child is not guilty of negligence. And if the jury find, from the evidence, that deceased was of the age of eight years, and did not possess the discretion of an adult or grown person, at the time of the injury, then the jury should consider these facts in determining whether or not plaintiffs' child, Eddy, was guilty of negligence, at the time of said injury, that contributed to cause said injury."

"4. The jury are instructed that it is by law made the duty of defendant to furnish its cars with such adjustable gates or guards as shall effectually prevent passengers from getting on or off any car by the front platform, while the car is in motion, and if the jury find, from the evidence, that the driver of defendant's car neglected to keep a gate or guard across the east side of the front platform of car number ten, so as to prevent passengers from getting on or off said front platform, that, by reason thereof deceased came to his death, and that deceased was not guilty of any want of ordinary care and prudence in his conduct on said occasion, such as could reasonably be expected from a boy of his age, then the defendant is liable in this suit."

"5. Although the deceased child may have been guilty of misconduct, or failed to exercise ordinary care and prudence while on defendant's car, which may have remotely contributed to its death, yet if the employe of the defendant was guilty of negligence in the manage-

ment of car number ten, which negligence was the immediate cause of the death, and with the exercise of prudence and care·by said employe, after the danger was impending, said injury and death might have been prevented, the defendant is liable in this suit."

"6. If the jury believe, from the evidence, that plaintiffs were, at the time of the injury and death of Eddy Muehlhausen, the parents of said Eddy, and the deceased was an unmarried minor at that time, and that said Eddy died from injuries resulting from or occasioned by the negligence or carelessness of defendant's agent, servant, or employe, whilst running, conducting, or managing one of their cars, and without negligence on the part of the deceased or these plaintiffs, directly contributing thereto, as explained in other instructions, then the defendant is liable in the action, and the jury should find for the plaintiffs."

"7. If the jury find for the plaintiffs, they will assess the damages at five thousand dollars, that being the amount fixed by law."

The court, at the defendant's request, gave the following instructions :

"3. The court instructs the jury that the mere fact that Eddie Muehlhausen was on the car did not constitute or make him a passenger thereon."

"8. The court instructs the jury that the gate required by law for the defendant to keep on its front platform was an adjustable gate—that is, a gate that could be opened and shut, and if the jury believe from the evidence, that at the time Eddie Muehlhausen was injured by the car, the defendant used, on the front platform of the car, a gate which, when closed, would effectually keep persons from getting off the platform, unless it was opened, or they got over it, then the court instructs the jury that they cannot infer any negligence or breach of duty, on the part of the defendant, in regard to the character of the gate, or its adjustments,

though the jury may believe that it could be opened easily, and a small boy could open it."

"11. The court instructs the jury that the burden of proving the facts in the case necessary, under the instructions of the court, to make the defendant liable, is upon the plaintiffs, and if the jury believe, after considering all the testimony and witnesses, that the plaintiffs have not established said facts, by a preponderance of testimony, that is, by testimony entitled to the greater weight and credence, then the jury will find for the defendant. And if the jury believe that the plaintiffs have so established said facts, and the jury also believe, from the evidence, that Eddie Muehlhausen got, or jumped, off the car, while in motion, and that his so doing was reckless and negligent, and directly contributed to his injuries received, then the jury will find for the defendant."

"12. The court instructs the jury that if they have any sympathy for, or prejudice against, either of the parties to this suit, they must not permit such sympathy or prejudice to affect their consideration of the case, but they must decide the same according to the evidence, under the law, as given them in the instructions by the court."

The court refused to give the following instructions asked by defendant;

"1. The court instructs the jury that, under the pleadings and evidence in this case, their verdict must be for the defendant."

"2. The court instructs the jury that, under the evidence in this case, Eddie Muehlhausen was not a passenger on the car."

"4. The court instructs the jury that the mere facts that Eddie Muehlhausen was on the car, and the driver did not object to his being there after he had knowledge of it, did not constitute or make him a passenger thereon."

"5. The court instructs the jury that there is no evidence in the case tending to prove that the driver of the car saw Eddie Muehlhausen getting on the car, or consented to his getting on, and if the jury believe, from the evidence, that the driver of the car stopped to let the girls get on at Illinois avenue, or asked, or permitted them to get on, the court instructs you that these facts, if so believed by the jury, gave no authority for Eddie Muehlhausen to get on the car."

"6. The court instructs the jury, that if they believe, from the evidence, that Eddie Muehlhausen got on the car merely for the purpose of riding a short distance, and then jumping off, or getting off again, without any intention of paying his fare, and did not pay it, and did not offer to pay it, then the court instructs the jury that he was not a passenger on the car, even though the driver knew he was on the car."

"7. The court instructs the jury that if, under the other instructions given them relating thereto, they believe, from the evidence, that Eddie Muehlhausen was not a passenger on the car, then the jury will find for the defendant."

"9. The court instructs the jury that, if they believe, from the evidence, that the injuries to Eddie Muehlhausen, from which he died, were occasioned by his getting off the front platform of the car, their verdict must be for the defendant."

"10. The court instructs the jury that they cannot infer any negligence or breach of duty on the part of the defendant in the case, from the fact that there was no conductor on the car while Eddie Muehlhausen was on it."

The court, of its own motion, gave the following instruction :

" The court instructs the jury that if they believe, from the evidence, that Eddie Muehlhausen got on the

car merely for the purpose of riding a short distance and then jumping off, or getting off again without any intention of paying his fare, and did not pay it, and did not offer to pay it, then the court instructs the jury that he was not a passenger on the car, even though the driver knew he was on the car; unless the jury believe the driver consented to his being and remaining upon the car."

*S. P. Galt* for appellant.

(1) Plaintiffs' instruction numbered one was erroneous; so, instruction number two, for plaintiffs, and the one given by the court, of its own motion, should have been refused. The deceased was a wrong-doer the moment he stepped his foot on the car, merely to steal a ride, and so continued until he jumped therefrom. *Robertson v. Railroad*, 22 Barb. 92. (2) The plaintiffs must recover, if at all, on the allegations of their petition, and the theory based thereon, on which it was tried. *Harris v. Railroad*, 37 Mo. 309; *Pensenneau v. Pensenneau*, 22 Mo. 27; *Clements v. Yates*, 69 Mo. 625; *Bray's Adm'r v. Seligman's Adm'r*, 75 Mo. 40. For this reason, among others, plaintiffs' instruction, numbered five, was improper. The terms, "exercise of prudence and care," in the instruction, were not explained, which was error. The words, "remotely contributed," should, also, have been defined. The jury could not know, and should not have been permitted to speculate upon their meaning in law. *Wyatt v. Railroad*, 62 Mo. 411; *Wyser v. Chesley*, 53 Mo. 547; *Edelman v. Transfer Co.*, 3 Mo. App. 503. (3) The court erred in refusing defendant's instruction numbered nine. The plaintiffs can maintain this suit at all only by virtue of the statutory act which permits them to do so, as the action for personal injuries does not survive; but the same authority, the law-making power, has also said that this defendant shall not be liable to them, if the injuries

were occasioned by the deceased getting off the front platform of its car. That concludes the question. *Mc-Keon v. Railroad*, 42 Mo. 79 ; *Burns v. Railroad*, 50 Mo. 139. The fact that the legislature, also, requires defendant to keep adjustable gates on the front platform, so as to effectually prevent "passengers" from getting on or off there, does not affect the above question. (4) The court should have given defendant's instruction numbered seven. (5) So, instruction numbered six, asked by defendant, should have been given. No person can become a passenger except by a contract, express or implied. When a person does not intend to become a passenger, and does nothing with that intent, he is not a passenger. *Lillis v. Railroad*, 64 Mo. 464 ; *Railroad v. Nichols*, 8 Kas. 505 ; *Robertson v. Railroad*, 22 Barb. 92 ; Pierce on Am. Railw. Law, 264, cited with approval in *Railroad v. Hudelson*, 13 Ind. 328 ; *Lucas v. Railroad*, 6 Gray, 64 ; *Moss v. Johnson*, 22 Ill. 633. (6) If the deceased was not a passenger, he was a trespasser, and if, under the pleadings, there could be a recovery, though he was a trespasser, there was no act of the driver which, in law, amounted to negligence in the premises. As against trespassers, a party is only liable for willful or gross negligence. *State v. Railroad*, 24 Md. 84 ; *Terry v. Railroad*, 22 Barb. 586 ; *Robertson v. Railroad*, 22 Barb. 92 ; *Railroad v. Rollins*, 5 Kas. 189. (7) The court erred in excluding the testimony for defendant, offered to prove the effect of driving or putting boys off the car, who had jumped on, on the part of the road where the accident occurred, and the court, also, erred in sustaining the objection to the inquiry made of the conductor, why he did not stop the car and put the children out.

*G. A. Finkelnburg, Leo Rassieur* and *Dexter Tiffany* for respondents.

(1)   Plaintiffs' first instruction was properly given.

(2) So, plaintiffs' second correctly stated the law. *Sherman v. Railroad*, 72 Mo. 65 ; *Wilton v. Railroad*, 107 Mass. 108 ; *Dunn v. Railroad*, 58 Me. 187. (3) There was absolutely no evidence that deceased was a trespasser, or treated as such by the defendant. (4) Plaintiffs' fourth instruction was properly given. *Morrissey v. Ferry Co.*, 43 Mo. 380. (5) Plaintiffs' instruction numbered five was, also, rightly given. *Morrissey v. Ferry Co.*, 43 Mo. 380 ; *Huelsenkamp v. Railroad*, 37 Mo. 538 ; *Karle v. Railroad*, 55 Mo. 476 ; *Isabel v. Railroad*, 60 Mo. 475 ; *O'Flaherty v. Railroad*, 45 Mo. 71 ; *Werner v. Railroad*, 81 Mo. 374 ; *Welsch v. Railroad*, 81 Mo. 466. The word, "remotely," is perfectly proper, ordinary English, easily understood ; so are the words, "prudence" and "care." See *Morrissey v. Ferry Co.*, *supra.* English words used in their ordinary sense do not require definition by the court. *Edelman v. Railroad*, 3 Mo. App. 503. (6) Every instruction need not embrace every issue in the case ; the instructions given by the court, whether for plaintiffs or defendant, or upon the court's own motion, must be regarded together, and if, as a whole series of instructions, they are correct, and not calculated to mislead, a mere conclusion, based on the ground that each does not embrace all the issues, will not be ground for reversal. *Karle v. Railroad*, 55 Mo. 432 ; *Whalen v. Railroad*, 60 Mo. 328 ; *McKeon v. Railroad*, 43 Mo. 405, 407. (7) The fact that a passenger gets off the front platform does not conclude the question of liability. *McKeon v. Railroad*, 42 Mo. 79. (8) There is a general invitation to all persons to get on ; public street cars are run for the purpose of conveying passengers, and especially a car that is stopped to take on passengers. *Lillis v. Railroad*, 64 Mo. 464, 473. When a person does get on, under such circumstances, there is no presumption that he does not intend to become a passenger, and there is no evidence in this case that deceased did not intend to

become a passenger. *Railroad v. Brooks*, 57 Pa. 346; *Dunn v. Railroad*, 58 Me. 192. (9) The instruction for non-suit was, also, prop erly refused. *Frick v. Railroad*, 75 Mo. 595; *Buesching v. Gas Company*, 73 Mo. 219, 231; *Wilson v. Board of Education*, 63 Mo. 137. (10) When the facts in proof admit of different con-structions or inferences, the question of contributory negligence is for the jury. *Scoville v. Railroad*, 81 Mo. 439; *Mauermann v. Siemertz*, 71 Mo. 101; *Norton v. Ittner*, 56 Mo. 351; *Smith v. Railroad*, 61 Mo. 588; *Wyatt v. Railroad*, 55 Mo. 488. (11) Though instruc-tions may be subject to criticism or positively erroneous, still, the case will not be reversed if the error committed did not materially affect the merits of the action. R. S., sec. 3775; *Tate v. Railroad*, 64 Mo. 149; *Nelson v. Fos-ter*, 66 Mo. 281; *Noble v. Blount*, 77 Mo. 235; *Bradford v. Floyd*, 80 Mo. 207; *Methudy v. Ross*, 81 Mo. 481; *Otto v. Bent*, 48 Mo. 23; *Hedecker v. Granzhorn*, 50 Mo. 154; *Haskings v. Railroad*, 58 Mo. 302; *Presvitt v. Martin*, 59 Mo. 325; *Noffsinger v. Bailey*, 72 No. 216; *State v. Hopper*, 71 Mo. 425.

NORTON, C. J.—Plaintiffs' suit is based upon the allegations that they were the parents of Edward Muehlhausen, a minor; that he was a *passenger* on one of defendant's cars; that defendant, under an act of the legislature, was bound by law to furnish each of its cars "with adjustable gates, or guards, such as would effectually prevent *passengers* from getting on or off the front platform" of the car; that, *while such passen-ger* he was, by the agent of defendant in charge of the car, "negligently, carelessly, and recklessly, and in utter disregard of duty, permitted to stand upon the front platform of said car, and said defendant, through its agent in charge thereof, permitted said car to be run without a conductor thereon, and without closed gates, or guards on its front platform, as by law it was bound

to have''; that said car was so negligently, unskillfully, and in utter disregard of duty, run, conducted, and managed, as aforesaid, that, in consequence of said negligence, carelessness, and disregard of duty, of the defendant and its servants, said Edward was thrown' off, or permitted to jump off, said platform of said car, and was run over by the car and killed.

The defendant's answer denies the allegations of the petition, and pleads, also, contributory negligence in this, that Edward got on the car when he had no right to, went on the front platform, and there jumped off, or got off, when the car was in motion, and was injured by reason thereof; pleads, also, that if he was injured, as in petition stated, his injuries so sustained were occasioned by his getting off a car of the defendant at the front or forward end thereof, and on that account, by virtue of the provisions of a statute of this state, entitled, "An act concerning street railroads in the city of St. Louis," approved January 16, 1860, defendant is not liable therefor, or for any damages resulting therefrom. The reply is a general denial. Plaintiffs obtained judgment on the trial for five thousand dollars, which, on appeal to the court of appeals, was affirmed *pro forma*, on stipulation.

The evidence on behalf of plaintiffs tended to show that Eddie Muehlhausen, a boy about eight years of age, in company with other children, was returning from school, and that the driver of one of defendant's cars stopped it to allow two or three girl children to enter the car, some of the witnesses testifying that he stopped at their call, and others that he beckoned to them, and stopped, or slackened, the speed of the car for them to get on. It also tended to show that the girls got on at the east end of the front platform of the car, and, also, that the Muehlhausen boy boarded the car about the same time, whether at the front or rear end, does not clearly appear, but it does appear, that

after getting on he stood on the front platform by the side of the driver, till after riding a short distance, about two blocks, he either fell from, or jumped off, the east side of the front platform, and was run over and killed, some of the witnesses testifying that he jumped off, the boy, himself, on being asked by the person who picked him up just after the accident, how it happened, replied by saying, "I fell off the front platform." The evidence also tended to show, that on the east side of the front platform, at which the boy either fell, or jumped off, there was no gate at the time, and that when the children boarded the car there was no conductor in charge of it, nor was there any at the time the accident happened, but the car was in the sole care of the driver, the conductor having previously left the car. The evidence also tended to show that the driver was aware of the presence of deceased on the car, but that nothing was said by the driver to the boy, nor by the boy to the driver, and that no fare was demanded of him, nor did he pay any. The evidence on the part of defendant, as given by the driver, tended to show that previous to the accident he had removed the gate off the east side of the front platform to let a passenger off, at his request, but that, after he got off, he put the gate back securely in its place; that he did not see the boy get off, and did not know that he was going to do so; that he did not invite the girls to get on the car, nor stop it for them to get on, but that while he was going slowly, they jumped on the car, and also a lot of boys jumped on, the deceased being one of them; that all of them got on at the rear platform; that the east front gate was securely fastened; a boy could not get out there unless he removed the gate.

Defendant seeks a reversal of the judgment for alleged error committed by the court in rejecting evidence, and in refusing and giving instructions. On the trial, defendant offered to prove by its conductors, who

knew what, before the death of deceased, was the effect and result to the boys who jumped on the cars down on that portion of the road, as these boys did; what was the effect, result, and danger, to them to stop the cars and put them off; what the boys would do; and further offered to prove, by the driver of the car, why he did not stop the car on this occasion and put the deceased and other boys off. This evidence the court rejected, and, we think, properly. Whatever boys might do when put off, or whatever reason the driver may have had for not putting the boy *off* could not relieve the company from a liability for an injury inflicted by the negligence of defendant while he was *on* by the permission and consent of those in charge of the car, and under circumstances entitling him to the same care which it was the duty of the company to bestow or observe in carrying passengers.

It is next objected that the court erred in giving and refusing instructions. While the first instruction for plaintiffs may be subject to some verbal criticism, we perceive no substantial objection to it. It is not broader than the petition, nor does it embrace a case not therein made, nor authorize a recovery on facts not alleged.

The second instruction for plaintiffs is warranted by the rule stated in *Sherman v. Railroad*, 72 Mo. 65, where it is said: "The train being one on which passengers were allowed to be carried, even if the plaintiff boarded the train without the permission or knowledge of the conductor, yet, as the conductor, after he became aware of his presence on the train, suffered him to remain, he was entitled to the same protection as if he had paid his fare."

The instruction given by the court of its own motion is claimed to be erroneous. There is no evidence in the record, except of conjectural character, that deceased was on defendant's car without any intention of paying

his fare, and the instruction, as given, was favorable to defendant in this respect, and the justification annexed to it by the words, "unless the jury believe the driver consented to his being and remaining on the car," was justified by the authority above cited.

It is objected that the court erred in not using in the fourth instruction the words, *such gate*, instead of *a gate*, and that the instruction is erroneous and misleading, in that it authorizes a recovery without the jury being required to find that deceased was a passenger. The objection is unsubstantial, because the jury had been told, in the first instruction, that they must believe that deceased was a passenger before they could find for plaintiffs, and because the kind of gate defendant was required to keep was fully explained in the instruction, and in view of this we cannot conceive how the jury could have been misled by the use of the words, a gate, instead of such gate.

The objections to the fifth instruction are, that it is too general, does not define the word, "remotely," or specify the degree of "care and prudence" required of defendant, and raises the question concerning saving the boy by prudence and care, after his danger was impending, which it is insisted was not in the case. The boy's danger was impending when standing on the front end or platform, provided the gate was not in its place, as the evidence tended to show, and it was the duty of the driver to put it in its place, which, if done by him, in all human probability, the accident would not have occurred. The instruction is not more comprehensive than the petition, and is not to be condemned for the use of the words, "remotely," and "prudence and care," without further explanation. See *Morrissey v. Wiggins Ferry Co.*, 43 Mo. 384, where a like instruction, as to the use of the above words, was approved.

The objection urged to the sixth instruction is, that it ignores the question as to whether deceased was a pas-

senger, and leaves the jury to find, as a matter of fact, what is contributory negligence, without any explanation as to what constitutes contributory negligence. It will be perceived that in the first instruction the court predicates the right of plaintiffs to recover on the fact that deceased was a passenger, and in the instruction objected to, that the jury were not left at sea and without a guide as to what would constitute contributory negligence, but were directly referred to other instructions explaining what would be contributory negligence, and the facts necessary to constitute it are set out in the eleventh instruction given for the defendant. The failure to embrace all the issues in one instruction is not error, if they are all embraced in the series of instructions given, and they, as a whole, are correct, and not contradictory, nor calculated to mislead. *McKeon v. Railroad*, 43 Mo. 405; *Whalen v. Railroad*, 60 Mo. 328; *Karle v. Railroad*, 55 Mo. 476.

It is also insisted that the court erred in refusing instructions one and two, asked by defendant, to the effect that, under the pleadings and evidence, plaintiff could not recover. These instructions were properly refused, if for no other reason than the fact in evidence that the boy stated "he fell off the front platform," especially so, in view of the fact, which the evidence tended to show, that there was no gate in its place to prevent his falling off, and the fact that the car was going about five miles an hour, with a curve in the track.

The ninth of defendant's instructions was properly refused, because it ignored the duty imposed by law on the defendant to keep an adjustable gate on the front end to effectually prevent passengers from getting off there. In support of this instruction it is argued by counsel that, inasmuch as it is provided by section 9 of an act of the General Assembly, approved January 16, 1860 (Acts p. 518) (defendant company being one of

the companies mentioned in said act) that: "said railroad companies shall not be liable for injuries to persons occasioned by their getting on or off the cars at the front or forward end of the car;" that if deceased got off the front end of the car and was thereby injured, the defendant is not liable, although deceased was so young in years as not to comprehend the danger incident to such an act, and, although the company may have had no gate in its place to prevent his getting off, as is provided by section 4, Acts 1869, page 207, which is as follows: "No passenger shall be permitted to get on or off any car, by the front platform, while the car is in motion, and each car shall be furnished with such adjustable gate, or guard, as shall effectually prevent it." It is insisted by counsel that this last act is for the protection of passengers, and means nothing more than if not complied with by defendant, and by reason thereof a passenger should be thrown, or fall off, the defendant *per se* would be liable. If the act means nothing more than this, the necessity for its passage is not apparent, because the act of 1860 only exempts the company from liability for injury to any person sustaining such injury by *getting on or off* the front end of a car, but does not deny the right of a passenger to recover, who, through the negligence of a defendant company, was either thrown or caused to fall off such front end, or platform. *McKeon v. Railroad*, 42 Mo. 79. The act of 1869 was passed to secure safety of life and limb, and should not be narrowly construed. In view of this, and the fact that children of an age too young to comprehend the danger of getting off the front end of a car, in motion, were liable to become passengers as well as adults, it is not going too far to say that it was doubtless within the humane purposes of this act to provide against such danger for this class, by not only requiring the companies to furnish an adjustable gate for the forward end of the car, but such an one as would not only prevent, but

effectually prevent, them from getting off at such end. The instruction wholly ignored the duty imposed by the act of 1869, and for that reason was properly refused.

While, under the pleadings, instruction number seven might well have been given, its refusal is not sufficient to justify a reversal, inasmuch as what it declares is virtually declared in the first instruction, given for the plaintiffs, which predicates their right to recover on the fact that deceased was a passenger, and the refused instruction, if given, would only have been a reiteration, in a negative form, of what has already been stated in the first instruction.

The claim of counsel, that there was no evidence that plaintiffs were the parents of deceased, is not well taken. While the record showed that one of the plaintiffs testified that they were the parents of *Johnny* Muehlhausen, it also shows that defendant admitted that the child alluded to by the witness was the one run over and killed by the car, mentioned in the petition, and at the time mentioned. The point made is entirely without merit.

Judgment affirmed, in which all concur.