PETER WILBURN, Respondent, v. ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, April 29, 1889.

1. **Damages:** RAILWAY INJURY: AUTHORITY OF EMPLOYE. A petition, which states that the plaintiff, while a passenger on a moving railway train, was directed by the conductor, or some other employe of the defendant railway company, to jump off, on reaching his stopping place, and that by reason of obeying such direction the plaintiff was permanently injured, is not open to fatal objection on the ground that it does not state that the "other employe" was authorized by the defendant to give such directions to passengers. A railway carrier is bound to give its passengers reasonable warning and direction as to alighting from its trains, and the passenger is not bound to know at his peril the authority of the various servants of the company.

2. **Damages:** RAILWAY INJURY: INSTRUCTION. An instruction to the effect, that if, when the plaintiff hesitated to get off the platform of the moving car, the conductor or brakeman told him that he would not get hurt, and to hurry up and get off, and if the plaintiff thereupon, in obedience to such direction, undertook to jump off, and in doing so received the injuries complained of, then the verdict should be for the plaintiff, was erroneous, in that (1) it ignored the question whether the employe in giving the direction, was guilty of a want of reasonable care—in view of all the circumstances—which question was eminently one for consideration by the jury, and not for the court to determine. (2) It failed to submit to the jury the question whether the directions given by the employe were the *cause* of the injury.

3. **Damages:** CONTRIBUTORY NEGLIGENCE : INSTRUCTION. An instruction which states proper hypotheses of fact upon which the plaintiff ought to recover, but which makes no reference to any hypothesis of contributory negligence—that being also an issue on trial—will not constitute a ground for reversal, if other instructions are given at the same time, which properly set forth the effect of that defense when sustained by the evidence.

4. **Damages:** ACT OF NEGLIGENCE NOT CHARGED : INSTRUCTION. An instruction which bases a right of recovery by the plaintiff upon the defendant's act of negligence in failing to stop the train for the plaintiff to leave it, when no such act of negligence is charged in the petition, is erroneous.

5. **Damages:** INSTRUCTION. An instruction which directs a verdict for the plaintiff if the jury find, in effect, that the directions for getting off the train were given as alleged, and so that a man of ordinary reason would believe them to be intended as expressed, was erroneous, in that it withdrew from the jury the principal issues in the litigation.

6. ———. An instruction which authorizes the jury to include among the causes of damage "such other causes as would be just and proper" is erroneous, since it opens the way for an unlimited variety of causes suggested by the loose conceptions of the jury, but having no sanction in the rules of law. The measure of damages is a question of law, and is never to be submitted to the jury as a question of fact.

*Appeal from the St. Francois Circuit Court.*—HON. JAMES D. FOX, Judge.

REVERSED AND REMANDED.

*William Carter* and *Henry G. Herbel,* for the appellant.

The court erred in overruling defendant's objections to the introduction of any evidence under the amended petition. *Snyder v. Railroad,* 60 Mo. 413 ; *Farber v. Railroad,* 32 Mo. App. 378 ; *Stringer v. Railroad,* 9 S. W. Rep. 905 ; *Whitehead v. Railroad,* 22 Mo. App. 62. The court erred in giving the instructions asked by plaintiff. *Ridemore v. Railroad,* 81 Mo. 230 ; *Brown v. Road Co.,* 89 Mo. 154. The court erred in overruling

defendant's motion for a new trial, as the verdict is not supported by the evidence. *Mathiason v. Mayer*, 90 Mo. 585; *Spiva v. Railroad*, 88 Mo. 73; *Goetz v. Railroad*, 50 Mo. 472; *State v. Nauert*, 2 Mo. App. 297; *Henson v. Railroad*, ——————.

*Taylor & Smith*, for the respondent.

Plaintiff's instructions, taken as a whole, present the law fairly. *Karle v. Railroad*, 55 Mo. 476; *Whalen v. Railroad*, 60 Mo. 327; *Owens v. Railroad*, 95 Mo. 181; *Railroad v. Cantrell*, 37 Ark. 519; *Noble v. Blount*, 77 Mo. 239; *Mauerman v. Sumerts*, 71 Mo. 105. Plaintiff's injuries were caused by the negligent conduct of defendant's employes, and not by his own negligence. *Owens v. Railroad*, 95 Mo. 180; Whittaker's Smith on Negligence, 305, 607; *Brown v. Railroad*, 54 Wis. 342; *Lindsey v. Railroad*, 18 A. & E. Ry. ——; *Doss v. Railroad*, 59 Mo. 37; *McKeon v. Railroad*, 43 Mo. 405; *Strous v. Railroad*, 75 Mo. 190; *Donahoe v. Railroad*, 83 Mo. 563; Pierce on Railroads, 314; *Henry v. Railroad*, 76 Mo. 294; *Brooks v. Railroad*, 135 Mass. 21; *Railroad v. Smith*, 59 Tex. 406; Whittaker's Smith, 158, 159; *Flower v. Railroad*, 69 Pa. St. ——————. The petition of plaintiff was sufficient, and the testimony admitted in support thereof proper. Pierce on Railroads, 277; *Sherman v. Railroad*, 72 Mo. 66; Whittaker's Smith on Negligence, 155, 156; *Garretzen v. Duenckel*, 50 Mo. 107; *Snyder v. Railroad*, 60 Mo. 416; *Perkins v. Railroad*, 55 Mo. 212; *Travers v. Railroad*, 63 Mo. 423.

THOMPSON, J., delivered the opinion of the court.

The plaintiff, a colored boy then about fifteen years of age, received an injury, in the year 1881, while attempting to alight from the passenger train of the defendant, in the night-time, at a coal chute near DeSoto station, in this state, which resulted in the amputation

of both his legs. He brought the present action to recover damages for this injury, and recovered a verdict and judgment in the sum of fifteen hundred dollars, from which the defendant prosecutes this appeal.

I. The first assignment of error which we shall consider is, that the defendant's objection to the introduction of any evidence should have been sustained, because the petition failed to state a cause of action. The amended petition, after stating certain preliminary matter which need not be set out, recited that, on or about the twenty-sixth day of August, 1881, the plaintiff was a passenger in one of the passenger cars of the defendant on its railroad, from Taylor street station, in St. Louis, to the town of Mineral Point, in Washington county, Missouri, for which the plaintiff paid the defendant $1.65 as fare, the price of a ticket which he had purchased from the agent of the defendant at Taylor street station, to Mineral Point. That, after leaving Taylor street station and before reaching Jefferson Barracks, the conductor of the train took up plaintiff's ticket, at which time the plaintiff told the conductor that he wanted to stop over night at the coal chute near DeSoto, or at DeSoto, which the defendant said he could do. The petition then continued thus: "Plaintiff states that he afterwards went to sleep, and slept until the conductor, *or some other employe on said train*, of said defendant, woke him up at said coal chute or DeSoto, and informed him that this was the place where he wanted to wait over for the night. Plaintiff states that he hurried to the front platform of the car, after being waked up as aforesaid, and that the train was moving, and it was very dark, and he did not want to get off the train then, was afraid of being injured ; that the conductor, *or some other employe of said defendant*, of (*sic*) said train, to the contrary notwithstanding, ordered him to jump from said train, which he did, as he was negligently directed to do by

said conductor or other employe; and was then and there, by said moving train, thrown around just before said platform, falling in front of said cars, which, with two or three other cars, passed over his body; and that he did then and there receive such grave and serious personal injuries as resulted in the loss of both his legs, making him a helpless cripple for life. Plaintiff further states that the employe on said passenger train who ordered him to jump from said train, under the circumstances as aforesaid, was guilty of the grossest negligence and incompetency in the discharge of his duty as such employe; and that he, the plaintiff, received the personal injuries complained of as aforesaid, in consequence of the gross neglect of duty and unreasonable conduct of the officers, agents, and employes managing and operating said passenger train upon which plaintiff was travelling as aforesaid."

The objection to this petition is indicated by the words in italics, —that it does not state that the "other employe" who gave the direction to the plaintiff to alight was *authorized* by the defendant to give such directions to passengers. But we think that the petition need not state this, because, in our opinion, the plaintiff need not prove it in order to a recovery. This question is not governed by the ruling of this court in *Farber v. Railroad*, 32 Mo. App. 378, where the plaintiff was hurt by the alleged negligence of a brakeman of a freight train in putting him off the train, and where it was held that he could not recover without showing that the brakeman, in putting him off, was acting in the line of his duty. The distinction is between the case of a trespasser and of a passenger, and this distinction was recognized in that case. A railway carrier owes to its passengers the duty, especially in the night-time, of giving them reasonable warning and direction as to alighting from the train at their destination. The passenger cannot know, at his peril, the authority of the various servants of the company; and if one of them

undertakes to give a passenger such warning or direction, the passenger is entitled to presume that he is authorized to do it and is acting in the line of his duty in doing it. This principle was recognized and acted upon by the supreme court of Illinois in the late case of *Lake Shore, etc., Railroad v. Brown*, 123 Ill. 162; s. o., 5 Am. St. Rep. 510, 523, where it was held that an instruction was properly refused which made the plaintiff's right of recovery depend on the authority of the switch-man or engineer to direct the deceased to take passage upon the engine, without reference to his apparent authority, and whether the deceased knew of such want of authority, or not.

II.    The next assignment of error relates to the first instruction. In order to a proper understanding of this, it will be necessary to state the substance of the evidence. The evidence tended to show that the plaintiff purchased a ticket at Taylor street station, in St. Louis, to Mineral Point, as alleged in the petition, — intending, however, to get off at the coal chute, a little north of DeSoto, where he had a friend living; that he advised the conductor of his desire to get off at that place, and the conductor told him that he would allow him to do so; that, thereupon, the plaintiff went to sleep, and when the train arrived at that place, some employe of the defendant woke him, and told him to get off; that he went to the front platform of the car in which he was riding and attempted to get off, the train being in slow motion at the time; that, in stepping down, he missed the lower step and fell, and the car struck him in some manner and threw him under the wheels, so that his ankles were run over by some of the wheels, and so crushed and lacerated that amputation became necessary; that he cried for help, and was found on the track after the train had passed for some distance; that he was removed first to DeSoto station on a flat "push car," that he was afterwards taken to defendant's hospital in St. Louis, which hospital was

maintained by the defendant for the benefit of its employes ; that his legs were there amputated, and that he remained there for about six months at the expense of the defendant.

On the other hand, the defendant's evidence tended to show that the plaintiff received the hurt by reason of the fact, that when the engine whistled for DeSoto station, the plaintiff went out upon the front platform of the car in which he was riding, to see if he could discover any of his friends, and lost his balance and fell off the car. The plaintiff acknowledged to one witness that he was riding *on the front end of the baggage car.* The evidence of both parties showed that the train on which he was riding was an express train, and the defendant's evidence showed that it was not customary for that train, going south, to stop at the coal chute. Another witness, who found the plaintiff crawling between the tracks after the accident happened, *thinks* that the witness told him that he had fallen off the train. On the seventh of December, 1886, the plaintiff wrote a letter to the defendant in which he stated that the way he came to receive the hurt was that, when the train stopped at the coal chute, the plaintiff asked the conductor if that was DeSoto, and the conductor said, yes, whereupon the plaintiff jumped up and ran out ; that when he got out the train had started ; that he stepped down on the steps to see if he could see the platform and *missed the step and fell,* and the car struck him on the shoulder and threw his feet under the wheels, cutting both of them off.

The court gave all the instructions requested by both parties. Those given on behalf of the plaintiff were seven in number. To the giving of all of them the defendant excepted.

The first of them was as follows : " The court instructs the jury, that, should they find, from the evidence, that the plaintiff bought of the ticket agent, at

Taylor street station, a station on defendant's railroad, a ticket for Mineral Point, also a station on its said road, and that he did then and there board one of the passenger trains of said defendant, and that his ticket was taken up by the conductor thereof; and should further find that plaintiff, at or near the time that the conductor took up his ticket, said to him that he wanted to get off of the train at the coal chute, near DeSoto, and that the conductor said all right, that he could do so, or something to that effect; and should further find that the conductor or brakeman waked up plaintiff, he having fallen asleep, at the said coal chute or DeSoto, informing him at the time that this was his place where he wanted to get off, and that plaintiff hurried to the front platform of the car in which he was, and that, on reaching the platform, seeing that it was dark, and that the train was moving, said that he was afraid to get off, whereupon the conductor or brakeman replied that he would not get hurt, to hurry up and get off, or something of that kind; and should further find that plaintiff, in obedience to the directions of either the brakeman or conductor, undertook to jump from said train, and in doing so, received the injuries complained of in his petition; then, and in that event, the defendant is liable, and the verdict should be for the plaintiff." This instruction was equivalent to directing the jury to find for the plaintiff if they believed the evidence adduced for him. It is erroneous for several reasons:

(1) It entirely withdrew from the jury the question whether the servant of the defendant who directed the plaintiff to alight was, under the circumstances, guilty of a want of reasonable care, or of such care as is incumbent upon a railway carrier under the circumstances. This was eminently a question for the jury. The court could not say, as matter of law, that it was

negligence for a servant of the defendant to advise or direct the plaintiff to alight from the train, under the circumstances. There is no rule or principle of law on which such a direction can be said to constitute negligence; it is merely *evidence* of negligence to be considered by the jury. Negligence is generally the failure to exercise that degree of care which is incumbent on the party sought to be charged under a given state of circumstances. There is no rule of law which would authorize a court to direct a jury that it is negligence in an employe of a railway carrier to direct a passenger to alight in the night-time at a stopping place when the train is moving slowly, as the plaintiff's evidence tended to show it was moving at the time when he was hurt. This defect also runs through several other instructions given at the request of the plaintiff, which we shall not set out.

(2) The above instruction is also erroneous in so far as it fails to submit to the jury the question whether the negligence of the servant of the defendant, in directing the plaintiff to alight from the train under the circumstances set out, was the *cause* of the injury. Negligence is not actionable unless it is the proximate cause of the damage. *Mathiason v. Mayer*, 90 Mo. 585. The hypothetical facts recited in this instruction may be true, every one of them, and yet the hurt which the plaintiff received may have been the result either of mere casualty or of his own negligence.

(3) This instruction is also challenged on the ground that, while it is drawn as a comprehensive instruction intended to cover the entire case according to the plaintiff's hypothesis, it ignores a disputed question in the case, put in issue by the answer and fairly raised by the evidence, namely the question of the contributory negligence of the plaintiff. This objection is met by the plaintiff, by appealing to the well-known rule that a judgment will not be reversed for the giving

of an imperfect instruction which is *supplemented* by some other instruction in the series, so that the instructions, taken together, present the case fairly to the jury and in a manner not calculated to mislead them. This principle is announced in the following among many other cases : *Reilly v. Railroad*, 94 Mo. 600, 611 ; *Whalen v. Railroad*, 60 Mo. 323, 327 ; *Karle v. Railroad*, 55 Mo. 476. If the question were *res nova*, my own opinion would be that an instruction, in an action for damages grounded upon negligence where the question of contributory negligence is in issue under the pleadings, which presents a hypothetical state of facts from which facts the jury would be authorized to infer contributory negligence on the part of the plaintiff or person injured, and which tells them that if they find from the evidence that such state of facts is true, they will find for the plaintiff, without including in the instruction the qualification that they must also find that the plaintiff himself was in the exercise of ordinary care or was not guilty of negligence contributing to the injury,—is obnoxious to the well-known rule that an instruction is bad which singles out some of the facts in the evidence not necessarily controlling, and directs the jury that if they find such facts to be true they will find for one party or the other. Speaking with reference to the above instruction, I think it may be referred to as proving the justness of my view ; since every one of the hypothetical facts recited therein may have been strictly true, and yet the plaintiff may have received the hurt complained of through his own negligence, in which case, under the well-settled law, he would not be entitled to recover. Nor do I think that such an instruction should be regarded as helped out by another instruction in the series which advised the jury that the plaintiff is not entitled to recover if they find that he was guilty of negligence materially contributing to the injury. On the contrary, I think that such a case presents a case of

contradictory or inconsistent instructions, in which case it is well settled that the judgment must be reversed ; since, for aught that appears, the jury may have followed and applied the erroneous instruction. For instance, in the present case the jurors may have planted themselves upon the first instruction alone, and, being of opinion that the hypothetical facts therein recited were true, they may have determined to find for the plaintiff in disregard of the question of his own negligence.

But this question is concluded the other way by the decision of the supreme court in *Karle v. Railroad*, 55 Mo. 476, where an instruction was given directing the jury to find for the plaintiff if they found a certain state of facts to exist, ignoring the question of contributory negligence, which question was, however, submitted to them by another instruction in the series. The supreme court, applying the rule above stated, that instructions are to be read in their entirety, and that "if, as a whole series of instructions, they are correct and not calculated to mislead, a mere conclusion based on the ground that they are not all embraced in a single instruction cannot avail * * * as a ground for reversal"—held that no error had been committed. The case of *Whalen v. Railroad*, 60 Mo. 323, gives a somewhat similar application of the same rule. We therefore conclude, on the authority of these cases, that the foregoing instruction was not erroneous by reason of omitting the element of contributory negligence, since that was brought to the attention of the jury by other instructions ; but that it was erroneous for the reasons previously stated.

III. We also think that the court erred in giving the following instruction at the request of the plaintiff :

"The court instructs the jury that if they shall believe from the evidence in this cause that defendant, by its agents, servants, and employes, consented and agreed with plaintiff to put him off at the coal chute in question, it was the duty of said defendant by its agents,

servants, and employes to have stopped its cars long enough for plaintiff to have landed from said car in safety ; and if the jury further find from the evidence in the cause that defendant, by its servants, agents, and employes, failed to stop its cars long enough at or near said coal chute for plaintiff to alight therefrom in safety, but told plaintiff to hurry up and get off, that that was his place to get off, and that defendant's servants, agents, and employes told plaintiff to jump off while the cars were in motion, and that plaintiff did so jump, and, by so jumping, fell under the cars and received the injuries complained of in the petition, then defendant is liable, and the jury will so find unless the jury further find that plaintiff failed to exercise the prudence in getting off of said train that a prudent man would have used under the same or similar circumstances.''

This instruction predicates a right of recovery upon an act of negligence not alleged in the petition, and hence not in issue in the case, viz: The failure of the defendant to stop the cars long enough for the plaintiff to alight in safety.

IV.    Among the instructions which the court gave at the request of the plaintiff was also the following :

''The court instructs the jury that should they find from the evidence, that either the conductor or brakeman of defendant's train directed or advised the plaintiff at the time and place mentioned in their ( the other ? ) instruction to get off of said train, and that such directions or advice were given at a time and in a manner that were calculated to make a man of ordinary reason believe that the conductor or brakeman meant and intended that he should get off at the time and under the circumstances then and there existing, and the jury so finding should return a verdict for plaintiff.''

This instruction is so palpably erroneous that comment upon it is scarcely necessary.    It withdraws from the jury the question whether, in giving such direction,

the servant or agent of the defendant was guilty of a want of a reasonable care, as well as the further question whether the plaintiff in alighting exercised ordinary and reasonable care. In fact it takes away from the jury most of the issuable questions in the case, and authorizes them to find a verdict for the plaintiff if the defendant's conductor or brakeman authorized him to alight under the circumstances detailed in the other instructions—for that is what we construe it to mean—deciding for the jury the essential question of negligence on which the plaintiff predicated his right to recover, and that of contributory negligence on which the defendant predicated its defense.

V. The court gave the following instruction upon the measure of damages:

"If the jury should find from the evidence that plaintiff is entitled to recover, they will assess the damages at a sum not exceeding ten thousand dollars, and that will compensate him for the bodily injury sustained, the pain suffered, physically and mentally, the effect of the injury on his health, and the pecuniary loss sustained by reason of his inability to work and labor for a livelihood and for such other causes as would be just and proper."

This instruction was also palpably erroneous. The last clause of it threw into the scale any element of damages which in the loose conception of the jury might be just and proper. They might choose to think that exemplary damages would be just and proper. They might choose to think that it would be "just and proper" to give this poor boy a limited *solatium*, because the defendant is a wealthy corporation and the plaintiff a poor boy who has received a grievous injury. Our experience with the verdicts of juries in railway damage cases has led us to the conclusion that they very frequently give damages on no higher conceptions than

this.   The measure or rule of damages is always a question of law, and is never to be submitted to a jury as a question of fact.   *Matney v. Grain Co.*, 19 Mo. App. 107, 112; *Hadley v. Baxendale*, 9 Exch. 241; *Blake v. Railroad*, 21 L. J. (Q. B.) 233, 237; *Knight v. Egerton*, 7 Exch. 407; *Pennsylvania Railroad v. Ogier*, 35 Pa. St. 60; *Parker v. Jenkins*, 3 Bush. (Ky.) 587.   The fact that the jury returned a very moderate award of damages in this case, fifteen hundred dollars, for the loss of both of the plaintiff's legs, does not, we think, cure this error; for, as we have before had occasion to observe, jurors reason so imperfectly in such cases that we feel bound to give scope to the general presumption that an erroneous direction is prejudicial.

The judgment will be reversed, and the cause remanded.   All the judges concur.